Ruffin, C. J.
 

 William Bullock -made his will on the '•23J of April, 1839. and therein ordered all his real estate to be sold, and then proceeded thus: ‘‘it is my will that all my negroes and other property, after paying my just •debts, may be held in joint stock by my wife and children, and that the negroes be hired out annually, and the hires appropriated to the support of my wife and children ; but •it is my express desire, if the income of my estate should •not be sufficient for the support and education of my chi!d-•ren, that my negroes should not be sold for that purpose, but that my family shall confine their expenses to their income. But should i-t be found that the income of my •estate exceeds the -expense of the family, the surplus will be divided amongst my wife and children. The property here
 
 *95
 
 divided to remain in joint stock until my children shall attain the age of 21, and then their portions to be set apart to them ; or m case my wife should marry again, then her portion (a child’s part) to^ be set off to her.” By a codicil of the same date, the testator directed, that, in case his son Benjamin’s portion of the income of the property should not be sufficient to rear and educate him, his executor, should raise a sufficient amount to defray the expense of his education, and charge the same to Benjamin, to be deducted out of his portion of the property. The testator died soon after.
 

 The defendant, Leary, proved the will in November, 1839, and paid the debts. In 1841, the testator’s widow intermarried with Andrew J. Hardy, of Bertie, and upon removing to that county, she carried her two children of her first marriage, Benjamin R. Bullock and Isadora Bullock, with her, they being of tender years. Soon after-wards Hardy was appointed, in Bertie County Court, the guardian of the two children, and i.n the course of a year Leary paid to him $>2G2 on account of their board, education and maintenance up to that time. Upon a bill filed for that purpose, the share of the slaves and money belonging to Mrs. Hardy was laid off and decreed to the trustee in a marriage settlement between Mr. and Mrs. Hardy, .and the residue of the estate was left in the hands of Leary, as executor, upon the trusts of the will for the two children. They continued to live with their mother, and were supported and sent to school by Hardy, up to his death in 1844, without his receiving any farther payment from Leary, or any part of their estate. After the death of Andrew J. Hardy, the present plaintiff, Thomas B. Hardy, administered on his estate, and brought actions at law against the two children respectively for their board and clothing and other expenses of education, and recovered therein
 
 *96
 
 against Benjamin, the sum of $331,92, and against Isadora the sum of $398,41, besides costs, and took out executions bn which he caused two of the slaves to be sold ; the children having no other property than that derived from the testator or its profits. Thereupon, Leary, the executor, brought trover against Hardy, the plaintiff, for the conversion of the slaves, and recovered judgment therein for $1087,12, and then the present bill was filed, alleging that the intestate’s demand against the children was for necessaries and reasonable in amount, and ought to have been paid out of their estates in the hands of Leary, their father’s executor, and ought now, together with interest, to be deducted out of the recovery in'the action of trover : and praying that it may be so paid or deducted, and in the mean time for an injunction against Leary’s raising the money by execution on the judgment in trover.
 

 The answer controverts but few of the statements in the. bill: but says, that at the time it was put in, namely, April 1851, the estate of the two children consisted of twenty slaves, and $425 in money at interest, and sets out the profits for 1848, 1849, and 1850 at $599 25, $400 62 1-2, and $353 87, and those amounts are insufficient for their maintenance and education during those periods.
 

 An injunction was awarded on the bill, and upon the filing of the answer, the cause was set down on the bill and answer, and, without any motion to dissolve, was transferred to this Court for hearing.
 

 It must be understood, as the case stands, that the sale of the negroes was illegal, because the children had not such an interest in them as was liable to execution. Yet, to the extent of necessary diet, lodging, clothing, and education suitable to their years, health, and fortune, the plaintiff’s intestate had á just claim, which ought to be satisfied out of such parts of their property as may be legally applicable
 
 *97
 
 to those purposes. The intestate was not an officious in-termedie!- merely: but, having married their mother, from whom at their age it was not proper to separate the children, he received them into his family and was appointed their guardian. Admit, that as a guardian he could not interfere with the powers conferred by the will upon the executor in respect to the management of the property and the education and expenses of the children, as far as they were to be defrayed out of the testator’s estate, yet it is plain, the executor was aware of the residence of the children, and did not disapprove of it, or, as far as seen, have reason to do so. The party was therefore equitably entitled to a reasonable remuneration. But, whether viewed as guardian, or simply as supplying necessaries, he can get'no more out of this property than such profits as accrued during the period they were with the intestate or had accumulated subsequently to the testator’s death, after defraying the current expenses of that interval, with the exception of such sums as were proper for the son’s education beyond his share of the profits.— Thai is the general rule between guardian and ward. But it was made emphatically the law between these parties by the restraints imposed on the exeeutor by the testator in respect to expenditures on the children : which it was in his power to impose during their minority, and from the observance of which the executor could only be discharged, if at all, by the previous order of the Conrt of Equity.— The plaintiff cannot look to profits accrued since his intestate supplied the children, because they were required for the nurture of the children during the same period, and it appears, indeed, that they were not more than adequate. To allow the anticipation of profits would be to defeat the provisions of the will altogether, inasmuch as it might force a sale of property to provide for the mere subsistence of the infants, or compel their being put out as apprentices,
 
 *98
 
 and thus prevent, their proper' education. But; though-expenses in anticipation of the income were not allowable, yet all the'profits prior to, as well as those accruing from year to year, during the expenditures, were applicable to the children’s nurture, both upon the general principle of law and the terms of' the will. There must, therefore, be an enquiry, what is a proper allowance to the plaintiff’s intestate for the nurture of the two infants, and what was the income of the testator’s estate from his death to that of the intestate, belonging to the children respectively, and how the same was applied by the executor on their behalf, and whether the residue of the income not before laid out for the infants, was sufficient to discharge such allowance to the intestate and interest thereon ; and if the same should be found not to have been sufficient, then the master will en-quire further, whether any of the expenditures for the infant Benjamin, above bis portion of the income, were necessary and proper for his education at those periods, taking into consideration his age, capacity, and property. The injunction will stand, until farther order, to be made on the coming in of the report.
 

 Pee Curiam. Ordered accordingly.